# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2016

Lyle W. Cayce
Clerk

No. 15-70015

CARLOS MANUEL AYESTAS, also known as Dennis Zelaya Corea,

    Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

    Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:

The district court denied Carlos Manuel Ayestas relief from his capital sentence under 28 U.S.C. § 2254. It then denied him investigative assistance under 18 U.S.C. § 3599(f) to develop evidence that might prove his previous attorneys were ineffective. Ayestas appeals these decisions. We AFFIRM.

Separately, after these district court rulings, Ayestas discovered new evidence suggesting his prosecution was based improperly on his national origin. He moved to amend his Section 2254 application to raise this new claim. The district court denied the motion. The court also denied a certificate of appealability, and so do we.

No. 15-70015

## FACTUAL AND PROCEDURAL BACKGROUND

Carlos Manuel Ayestas[1] was sentenced to death for the murder of Santiaga Paneque, who was killed during a robbery in her home in Houston, Texas, in August 1995. The Texas Court of Criminal Appeals affirmed his conviction and sentence on November 4, 1998.

In December 1998, Ayestas sought state habeas relief. His two court-appointed lawyers raised several claims, including an ineffective assistance of trial counsel ("IATC") claim. Ayestas, through his state habeas lawyers, argued that his trial counsel was ineffective because he failed to secure the attendance of Ayestas's family members from Honduras for sentencing mitigation. According to Ayestas, they "could have testified to [his] good character traits, positive upbringing, good scholastic record, and lack of juvenile or criminal record while growing up in Honduras." Ayestas did not claim that his trial counsel failed to conduct a reasonable investigation into all potentially mitigating evidence.

The State of Texas presented an affidavit from Ayestas's trial counsel in which he asserted that Ayestas ordered him not to contact Ayestas's family. According to trial counsel, Ayestas later relented and allowed him to contact Ayestas's family, either shortly before or just after jury selection. The family was unable to attend sentencing. Counsel said Ayestas's mother seemed "unconcerned" about her son's trial. The Texas state district court denied relief, holding that Ayestas's trial counsel made reasonable and diligent efforts to secure the attendance of Ayestas's family and was not ineffective. The Texas Court of Criminal Appeals affirmed in 2008.

---

[1] Carlos Manuel Ayestas's true name is Dennis Zelaya Corea. We refer to the defendant as. Ayestas because that is the name under which he was charged and convicted.

No. 15-70015

In 2009, new counsel for Ayestas filed in federal district court an application under 28 U.S.C. § 2254. For the first time, Ayestas asserted the claim that his trial counsel was ineffective by failing to make a reasonable investigation of all potentially mitigating evidence. Ayestas's federal habeas counsel argued that had trial counsel conducted a thorough investigation, he would have uncovered other mitigating evidence. Examples were Ayestas's lack of criminal history in Honduras, that one of his co-defendants in this case was a "bad influence" on him, that Ayestas suffered from schizophrenia, and that he was addicted to drugs and alcohol.

The district court determined that because this claim was not raised in the Texas state habeas proceeding, Ayestas had procedurally defaulted the claim. The court refused to excuse the default because Ayestas had failed to show "cause," as no factor external to Ayestas's defense impeded his state habeas attorneys' ability to present the broader IATC claim. In 2012, we denied Ayestas's request for a certificate of appealability ("COA"). *Ayestas v. Thaler*, 462 F. App'x 474 (5th Cir. 2012).

Shortly thereafter, the Supreme Court decided *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), which held that the ineffectiveness of state habeas counsel in failing to claim IATC may provide cause to excuse a default; if so, prejudice would need to be shown. After *Martinez*, Ayestas filed a motion for rehearing, asking us to vacate our prior judgment. We denied that motion, holding that *Martinez* did not apply in Texas because its procedures were distinguishable. The Supreme Court then extended *Martinez* to Texas in *Trevino v. Thaler*, 133 S.Ct. 1911 (2013). The Court vacated and remanded the present case to us for further consideration in light of *Trevino*. *Ayestas v. Thaler,* 133 S.Ct. 2764 (2013). We then remanded to the district court "to reconsider Ayestas's procedurally defaulted ineffective assistance of counsel claims in light of *Trevino*." *Ayestas v. Stephens,* 553 F. App'x 422 (5th Cir. 2014).

3

No. 15-70015

On remand, Ayestas filed a motion for investigative assistance under 18 U.S.C. § 3599(f), requesting a mitigation specialist in order to develop his broader IATC claim. On November 18, 2014, the district court entered a memorandum opinion and judgment, denying Ayestas habeas relief, denying a COA, and denying investigative assistance. The district court determined that neither Ayestas's trial counsel nor his state habeas counsel were ineffective, and thus the broader IATC claim was still procedurally defaulted. It then determined that because Ayestas's underlying IATC claim was still without merit, a mitigation specialist was not "reasonably necessary." On December 16, 2014, Ayestas filed a Federal Rule of Civil Procedure Rule 59(e) Motion to Alter or Amend the Judgment, re-urging many of his prior arguments.

Issues that arose after the district court's November 18 decision are also before us. On December 22, 2014, Ayestas's counsel, while reviewing portions of the prosecution's file at the Office of the District Attorney in Houston, discovered a Capital Murder Summary memorandum, prepared by the prosecution, stating that Ayestas's lack of citizenship was an "aggravating circumstance[]." Ayestas argues this indicates that the prosecution, at least in part, sought capital punishment on the improper basis of national origin.

On January 9, 2015, Ayestas filed a "Motion for Leave to Amend Original Petition for Writ of Habeas Corpus" where he, through Rule 15(e), sought to amend his Section 2254 application to add claims based on this newly discovered memorandum. He argued the state conviction and sentence violated the Equal Protection Clause and the Cruel and Unusual Punishment Clause of the Constitution. On January 14, 2015, Ayestas supplemented his December 16 Rule 59(e) motion to expand the basis upon which the district court should grant the motion.

Realizing the district court would not be able to review his new claims even if it were to grant his Rule 59(e) motion because they were not exhausted

No. 15-70015

in state court, Ayestas, on the same day, filed a motion to stay the federal proceedings until the new claims could be exhausted.  Ayestas argued that he had good cause for not presenting these claims previously in state court.  On February 17, 2015, the district court denied Ayestas's motions for leave to amend and for a stay.  The district court then denied the Rule 59(e) motion on April 1, 2015, and again denied a COA.

## DISCUSSION

The procedural posture requires Ayestas to appeal multiple aspects of the district court's decisions in order for us to reach the merits of his habeas appeal and his new claims.

First, because the district court rendered final judgment by denying Ayestas habeas relief in the November 18 decision and then entered the April 1 order denying Ayestas's Rule 59(e) motion, the final judgment must be vacated before Ayestas may amend his petition and add new claims.  *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981).  Ayestas asks us to vacate the judgment so he may amend his petition to include these new claims.  Second, Ayestas appeals the part of the February 17, 2015 order denying his motion for leave to amend under Rule 15.  Finally, because Ayestas's new claims are unexhausted in state court, he appeals the part of the February 17 order denying his motion for a stay and abeyance.

Generally, under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), we do not have jurisdiction to review a district court's "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" denying an inmate habeas relief unless the inmate first obtains a COA.  28 U.S.C. § 2253(c)(1)(A).  While both the district court judge and the relevant court of appeals may issue a COA, the inmate must first seek a COA from the district court.  *Gonzalez v. Thaler*, 132 S. Ct.

641, 649 n.5 (2012). The district court denied Ayestas a COA in both its November 18, 2014 and April 1, 2015 decisions. For Ayestas to appeal these two decisions, therefore, we must first grant him a COA. We grant a COA only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies an applicant's constitutional claims on procedural grounds, as the case here, a COA will issue only if the applicant shows that reasonable jurists would debate whether the district court was correct in its procedural ruling and whether the petition states a valid claim on the merits. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Somewhat separately, however, Ayestas appeals an aspect of the district court's November 18 decision denying him investigative assistance. We do have jurisdiction to review this without first requiring a COA. This is because a COA is only required of appeals of "final orders that dispose of the *merits* of a habeas corpus proceeding." *Harbison v. Bell*, 556 U.S. 180, 183 (2009) (emphasis added). "An order that merely denies a motion to enlarge the authority of appointed counsel (or that denies a motion for appointment of counsel [or assistance]) is not such an order and is therefore not subject to the COA requirement." *Id.* As such, as to the district court's decision to deny Ayestas investigative assistance, we review for abuse of discretion. *See Hill v. Johnson,* 210 F.3d 481, 487 (5th Cir. 2000). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Ebron,* 683 F.3d 105, 153 (5th Cir. 2012).

We will discuss first the issues arising from the denial of Ayestas's request for investigative assistance. We will then address the merits of Ayestas's IATC claim. Finally, we address Ayestas's claim that new evidence required some form of relief.

No. 15-70015

*I.    Investigative Assistance*

As mentioned above, an appeal of a denial of investigate assistance does not require a COA and is reviewed for abuse of discretion. For this particular claim, Ayestas argues the district court should not have examined the merits of his IATC claims until it provided him with a mitigation specialist and allowed the results of that investigation to be presented. Ayestas argues that under *Martinez* and *Trevino*, in order to prove that his prior lawyers were ineffective, he must be allowed to develop and discover what his prior lawyers should have developed or discovered. As Ayestas explains:

> By prematurely deciding that [Ayestas's] IATC claims were facially meritless, without affording resources for factual development under 18 U.S.C. § 3599(f). . . . the district court summarily dismissed [Ayestas's] petition based solely on its review of the allegations contained in the original petition filed in 2009.

Ayestas argues that the merits of the IATC claim cannot rest on the record from the state habeas proceeding, which allegedly is infected with the work of ineffective counsel. Instead, he must be allowed to develop new evidence to support his factual allegations. The argument, at least in part, is foreclosed by circuit precedent. A district court is within its discretion to deny an application for funding "when a petitioner has [] failed to supplement his funding request with a viable constitutional claim that is not procedurally barred." *Brown v. Stephens*, 762 F.3d 454, 459 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1733 (2015). Though *Brown* dealt with a defendant bringing an initial federal habeas claim and Ayestas's current appeal is before us on remand from the Supreme Court, the difference in procedural postures is not significant. The district court properly considered the procedural default prior to approving Section 3599(f) funding for this federal habeas claim.

In two recent post-*Martinez* and *Trevino* opinions, this court held that Section 3599(f) funding is available if the district court finds that there is a

7

No. 15-70015

"substantial need" for such services to pursue a claim that is not procedurally barred. *Allen v. Stephens*, 805 F.3d 617, 626, 638–39 (5th Cir. 2015); *Wade v. Stephens*, 777 F.3d 250, 266 (5th Cir.), *cert. denied*, 136 S. Ct. 86 (2015). Ayestas argues the district court, and by extension these two precedents, required an impossibility: proving deficient performance in order to be given resources to discover the evidence of deficient performance.   He mischaracterizes the requirement.   There must be a viable constitutional claim, not a meritless one, and not simply a search for evidence that is supplemental to evidence already presented. *Brown*, 762 F.3d at 459.  The basic point is that a prisoner cannot get funding to search for whatever can be found to support an as-yet unidentified basis for holding that his earlier counsel was constitutionally ineffective.   Instead, there must be a substantiated argument, not speculation, about what the prior counsel did or omitted doing.  Ayestas indeed offered such an argument.  We interpret the district court's ruling as being that any evidence of ineffectiveness, even if found, would not support relief.

The district court did not abuse its discretion when it declined to authorize a mitigation specialist for Ayestas before it determined the viability of Ayestas's claim.  We still must decide if the district court properly denied Ayestas investigative assistance on the basis that a mitigation specialist was not "reasonably necessary" because his claim was meritless.  For this, we must briefly analyze the underlying merits of Ayestas's claim. *See id.* We turn now to that question.

## II.    *Overcoming Procedural Default*

In order for the *Martinez/Trevino* exception to excuse a prior procedural default, Ayestas must present a viable claim that his trial counsel was

8

ineffective and his state habeas attorneys were ineffective in failing to raise trial counsel's errors. *See Martinez*, 132 S. Ct. at 1321.

Ineffective assistance requires deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if it falls "below an objective standard of reasonableness" based on "prevailing professional norms." *Id.* at 687–88. "[C]ounsel has a duty to make reasonable investigations," *id.* at 691, including an "obligation to conduct a thorough investigation of the defendant's background," *Porter v. McCollum*, 558 U.S. 30, 39 (2009). Nonetheless, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The specific deficiencies Ayestas raises concern his trial counsel's alleged failure to investigate and present evidence about his drug use and possible mental illness. Such evidence allegedly would have been discoverable if counsel had contacted family and friends in Ayestas's home country of Honduras. Ayestas also points out that his trial counsel, for 15 months, stopped pursuing mitigation evidence, only resuming his activities 10 days prior to jury selection. He also claims his counsel in the initial state habeas proceedings should have made an issue of this alleged ineffectiveness by trial counsel.

The district court rejected the claim because Ayestas barred his attorneys from contacting his family, finally relenting around the time of jury selection for his sentencing. Trial counsel then pursued evidence from the family in Honduras and California by sending letters to them and finally seeking the assistance of the United States embassy in Honduras. A few days after Ayestas allowed contact, trial counsel also telephoned Ayestas's mother in Honduras. As we have already discussed and as detailed in the district court's opinion, the mother showed a lack of zeal in assisting the defense. The

district court relied on caselaw in which we held that an attorney is not ineffective for failing to present evidence in mitigation at sentencing if the defendant orders counsel not to do so. *See Autry v. McKaskle,* 727 F.2d 358, 362–63 (5th Cir. 1984). We conclude that an attorney's compliance with a capital-case client's demand that contact not be made with his family is similarly permitted.

On appeal now, counsel argues that such interference by the defendant heightens the need for counsel to search for other sources of information about the defendant's background. We do not agree with such a standard. Regardless of the specific problems that arise in the investigation for mitigation evidence, the issue is whether counsel made "reasonable investigations or . . . a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 691). The district court pointed out trial counsel's efforts and discoveries despite the limitations under which counsel worked. Counsel spoke by phone with Ayestas's family. He acquired Ayestas's school records and was aware of the substance abuse. Ayestas was also examined by a psychologist.

The district court's analysis of the argument about Ayestas's mental illness relied in part on the absence of any evidence that medical records existed at the time of trial that would have shown Ayestas was suffering from any mental illness. Therefore, defense counsel were not on notice of the need to pursue this line of inquiry at his initial trial. This analysis injects the question of whether current counsel has shown a need for funding to pursue what evidence might have existed to alert trial counsel of Ayestas's mental state in 1997. The briefing here discusses at great length the progression of schizophrenia, the mental disease with which Ayestas has now been diagnosed. The diagnosis was not made until 2000 while he was in prison after his conviction for this crime. Perhaps, counsel posits, a thorough investigation

now would uncover evidence that early-stage symptoms of this disease were exhibiting themselves in 1997, making trial counsel's unawareness of those symptoms constitutionally ineffective representation.

We find no error in the rejection of the claims about mental illness. Trial counsel in 1997 had Ayestas examined by a psychologist. The briefing does not suggest that the examination itself revealed a basis for further investigation. Whatever medical understandings could be applied now to evidence about Ayestas's mental condition in 1997, with the benefit of hindsight and perhaps additional knowledge about this disease, does not undermine that trial counsel was not constitutionally ineffective in pursuing what appeared at that time to be unproductive lines of inquiry.

Moreover, even if trial counsel had pursued such lines of inquiry, the results would not have been fruitful. A *Strickland* ineffective representation requires deficient performance *and* prejudice. Prejudice means "a reasonable probability . . . the result of the proceeding would have been different." *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014). A reasonable probability is a "substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quotation marks omitted). The district court held that regardless of any deficiencies in the investigation about substance abuse, no prejudice resulted because, in light of the brutality of the crime, it was "highly unlikely that evidence of substance abuse would have changed the outcome of the sentencing phase of trial or of the state habeas corpus proceeding." That finding is valid. Further, even if Ayestas had entered the early stages of an as-yet undiagnosed mental illness, we find it at best to be conceivable, but not substantially likely, that the outcome may have been different.

As to the district court's refusal to fund an investigation into Ayestas's mental condition as it existed almost 20 years ago, we find no abuse of

No. 15-70015

discretion.  The arguments about what might be discovered still have to be examined from the perspective of what trial counsel reasonably should have known and done those many years ago.  *See Strickland*, 466 U.S. at 689.  The district court did not err in failing to allow this inquiry to proceed.

Because we agree with the district court that there is no basis to hold trial counsel was constitutionally ineffective for failing to investigate further the possible questions of mental illness and substance abuse, Ayestas's state habeas counsel were not ineffective for failing to pursue that line of investigation.  Raising every conceivable claim is neither required nor beneficial.  Ayestas's state habeas counsel raised 16 claims for relief, including 10 ineffective assistance of counsel arguments.  There was no shortage of claims, though mere numbers of claims do not dispel the possibility of constitutional ineffectiveness.  Because we have already held that trial counsel was not ineffective in failing to raise these particular claims, at most, Ayestas's arguments deal with the strategic choices the state habeas lawyers had to make.  Such choices are not subject to second-guessing by a court.  *Strickland*, 466 U.S. at 689.

In summary, the district court correctly rejected the assertion that Ayestas's trial and state habeas attorneys were ineffective.  As a result, because Ayestas cannot show that his claim is viable and that assistance was reasonably necessary, the district court properly determined that Ayestas was not entitled to a mitigation specialist under Section 3599(f).

To the extent that Ayestas also appeals the district court's November 18, 2014 memorandum opinion denying habeas relief on the merits, and the April 1, 2015 order denying his Rule 59(e) motion, these appeals are foreclosed.  For these appeals, Ayestas requires a COA.  As mentioned above, one requirement for the granting of a COA is a valid claim on the merits.  For the same reasons

that we have explained above for why Ayestas is not entitled to a mitigation specialist, we also deny Ayestas a COA.

### III.    *Amendment to Section 2254 Application*

We now turn to the issues that arise from the district court's denial of Ayestas's motion to supplement his claims with arguments about the Capital Murder Summary memorandum.  That is the document that suggested that Ayestas's non-citizen status was one of two factors that led to the recommendation that the death penalty should be sought.

Ayestas's appellate brief supporting his application for a COA acknowledged that in district court, he had "sought to amend with a claim wholly unrelated to the IATC claim litigated under *Trevino*," which was the matter we had remanded to the court.  Under what is called the "mandate rule," a district court on remand is limited to consideration of the matters that were the subject of the order from the appellate court.  *Henderson v. Stadler*, 407 F.3d 351, 354 (5th Cir. 2005).  We have used this articulation of the requirement:

> [T]he mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court.

*Id.* (quoting *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004)).  The district court held that adding the unrelated claims to the subject of the remand would violate the mandate rule.  Ayestas disagrees, first arguing the district court misinterpreted our remand order as limiting its discretion, and then arguing the mandate rule does not preclude the addition of a new claim. We disagree on both fronts.

As to his first argument, Ayestas claims that the last sentence of our remand order shows that we expressly declined to constrain the district court:

No. 15-70015

> We REMAND to the district court to reconsider Ayestas's procedurally defaulted ineffective assistance of counsel claims in light of Trevino. *We express no view on what decisions the district court should make on remand.*

*Ayestas v. Stephens*, 553 F. App'x 422, 423 (5th Cir. 2014) (emphasis added). Ayestas reads too much into this sentence. As the penultimate sentence clearly reads, the remand was limited to the reconsideration of the defaulted IATC claim. The last sentence simply indicates that we express no view as to how the district court should decide or approach this IATC claim.

As to his second argument, Ayestas relies heavily on a Supreme Court case as standing for the proposition that "the circuit court may consider and decide any matters left open by the mandate of this court." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895). But as explained above, our remand order did not leave open any matter other than the defaulted IATC claim. If anything, *Sanford Fork* supports our decision in this case. The district court did not err in its interpretation of our remand order or its application of the mandate rule.

Additionally, Ayestas's new constitutional claims are unexhausted in state court and therefore cannot now be reviewed here on the merits. 28 U.S.C. § 2254(b)(1)(A). Realizing the need for exhaustion, Ayestas filed a motion to stay and hold the proceedings in abeyance in order to return to state court to exhaust the new claims. "When a petitioner brings an unexhausted claim in federal court, stay and abeyance is appropriate when the district court finds that there was good cause for the failure to exhaust the claim; the claim is not plainly meritless; and there is no indication that the failure was for purposes of delay." *Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir. 2010). "[W]hen a petitioner is procedurally barred from raising [his] claims in state court, his unexhausted claims are plainly meritless." *Id.* (quotation marks omitted).

14

No. 15-70015

Hence, we turn to examining whether Ayestas would be barred under Texas law from bringing his new claims.

In Texas, subsequent petitions for writ of habeas corpus in a death penalty case based upon newly available evidence, are handled as follows:

> (a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> > (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application . . . .

TEX. CRIM. PROC. CODE art. 11.071 § 5(a)(1). Section 5(e) further provides that "[f]or purposes of Subsection (a)(1), a factual basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date." *Id.* art. 11.071 § 5(e).

Thus, Ayestas must show he exercised reasonable diligence in trying to obtain evidence such as the memorandum. Ayestas's briefing in this court and in the district court never suggests he sought to examine the prosecution's file prior to the December 22 search that uncovered the memorandum. A defense counsel's "duty to investigate" includes "efforts to secure relevant information in the possession of the prosecution [and] law enforcement authorities." ABA STANDARDS FOR CRIMINAL JUSTICE: DUTY TO INVESTIGATE AND ENGAGE INVESTIGATORS 4-4.1(c) (4th ed. 2015); *Rompilla v. Beard*, 545 U.S. 374, 385–89 (2005) (explaining that counsel's failure to look at a "readily available" prosecution file was deficient performance for the purposes of *Strickland*). Moreover, Ayestas makes no claim "that [the memorandum] was unavailable

15

to [his] trial counsel through a reasonably diligent examination of the case file the prosecution had made available." *Amador v. Dretke*, No. Civ.SA-02-CA-230-XR, 2005 WL 827092, at *18 (W.D. Tex. Apr. 11, 2005).

Ayestas offers two explanations for his failure to investigate the prosecution's file.  First, he argues that the state was under an affirmative duty to turn the memorandum over to him.  Second, he argues he properly assumed a search of the folder would not uncover information as material as this document.

The first explanation is based on Ayestas's having made two demands under *Brady v. Maryland,* 373 U.S. 83 (1963).  Under *Brady*, the state must disclose exculpatory evidence upon a proper demand by the defendant.  *Id.* at 87.  While the state was under an obligation to turn over such evidence in this case, there is no *Brady* violation if counsel, "using reasonable diligence, could have obtained the information." *Williams v. Scott*, 35 F.3d 159, 163 (5th Cir. 1994).  Though Ayestas is not asserting a *Brady* claim, the fact that there would be no *Brady* violation unless Ayestas were reasonably diligent in discovering evidence suggests to us that any alleged failings on the part of the state in not turning over the memorandum do not mitigate Ayestas's own responsibility to undertake a reasonably diligent investigation for the purposes of Section 5 of Article 11.071.  Hence, even though Ayestas filed two *Brady* demands, Ayestas was under an independent obligation to use reasonable diligence in attempting to discover exculpatory evidence, which, as explained above, he failed to do.

Ayestas's latter justification is that he "rightly assume[d] that the District Attorney would redact its file of all privileged work product, such as the capital murder summary."  This justification is circular and without merit.  Ayestas essentially argues that he assumed no material information was contained in the file, and that had he known such material information was in

the file, he would have investigated the file. Of course, had Ayestas known the memorandum was in the file he would have no doubt searched it, but the point of reasonable diligence is to ensure that such evidence is found when it is unclear where such evidence may lie. Ayestas's assumption does not serve to excuse his duty to secure information in the possession of the prosecution. ABA STANDARDS FOR CRIMINAL JUSTICE: DUTY TO INVESTIGATE AND ENGAGE INVESTIGATORS 4-4.1(c) (4th ed. 2015).

Additionally, as discussed above, even if not procedurally defaulted, Ayestas's claims are not likely to succeed on the merits. The district court did not err in concluding Ayestas's trial counsel and his state habeas attorneys were not ineffective. Hence, even if Ayestas could prove he exercised reasonable diligence in discovering the memorandum, he still cannot exhaust his new claims in the Texas courts because his claims are not meritorious.

Ayestas did not exercise reasonable diligence in attempting to discover the memorandum earlier. Therefore, he is unable to prove under Section 5 of Article 11.071(a) of the Texas Code of Criminal Procedure that he would be entitled to a subsequent state habeas hearing to exhaust his new claims that are based on the newly discovered memorandum. Hence, Ayestas has not exhausted, and will not be able to exhaust, these claims in state court. Because we are unable to review unexhausted claims, the district court did not abuse its discretion in denying Ayestas's motion for a stay and abeyance.

The request for certificate of appealability is DENIED. The judgment rejecting Ayestas's Section 2254 application is AFFIRMED.